Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 2/26/2015



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 3:14-bk-05344 |
|    MILDRED JOSEPHINE BRATT, | ) | |
|    Debtor. | ) | Chapter 13 |
| | ) | |
| | ) | Judge Randal Mashburn |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The State of Tennessee amended its property tax delinquency statute in a way that defeats long-standing principles of bankruptcy law disallowing claims for post-petition tax penalties. T.C.A. § 67-5-2010(d) conflicts with federal law and is unconstitutional.

When the purpose or effect of a state statute interferes with the effectiveness of a federal statute, the U.S. Supreme Court has said that the state statute may be rendered invalid.[1] T.C.A. § 67-5-2010(d) was amended to avoid the holding in *In re Gift*, 469 B.R. 800 (Bankr. M.D. Tenn. 2012) which affirmed that post-petition penalties are not permitted on tax claims in bankruptcy cases. The State's attempt to circumvent federal bankruptcy law, by equating penalties to interest, violates the Supremacy Clause of the United States Constitution, and the statute therefore cannot be enforced.

---

[1] *Perez v. Campbell*, 402 U.S. 637 (1971).

1

The following are findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as made applicable to this contested matter by Bankruptcy Rule 9014.[2]

## BACKGROUND

In 2012, *In re Gift*, 469 B.R. 800 (Bankr. M.D. Tenn. 2012) held that oversecured claimholders may collect post-bankruptcy interest, fees, costs, and charges – but not penalties – pursuant to the plain language of 11 U.S.C. §§ 502(b)(2), 506, and 511. In that case, the Metropolitan Government of Nashville and Davidson County ("Metro") sought to be paid on its oversecured claim for delinquent property taxes through the debtor's Chapter 13 plan, including a 6% penalty pursuant to T.C.A. § 67-5-2010. The *Gift* decision stated that a penalty is not a "fee, cost, or charge" under 11 U.S.C. § 506. The Bankruptcy Code allows oversecured claimholders to tack on interest and reasonable fees, costs, and charges, but it does not allow penalties, because penalties were not intended by Congress to be part of a consensual or nonconsensual lienholder's oversercured post-petition claim. *Id.* at 813.

Since 11 U.S.C. § 511 gives broad discretion to government authorities regarding the imposition of interest on tax claims but does not allow the same leeway for penalties, the practical application of *Gift* was that the Bankruptcy Code requires a debtor's plan to apply the Tennessee statutory interest rate (12%) to Metro's claim, but not the additional penalty

---

[2] This opinion deals solely with the proper interest/penalty to be applied to property tax delinquency debt. The parties previously agreed that the underlying Chapter 13 plan is feasible regardless of the outcome of this decision. Therefore, they agreed to confirm the debtor's Chapter 13 plan and reserve this issue affecting the treatment of the tax claim. Pursuant to the order confirming the plan, no payments are being made on the tax claim until the proper interest rate is determined. Following the Court's decision, the plan can be implemented in accordance with the Court's findings.

(6%) provided by T.C.A. § 67-5-2010. That ruling left Metro frustrated because it effectively meant that delinquent debtors in bankruptcy were required to pay only 12% interest, while other delinquent taxpayers were being levied interest and penalties totaling 18%.

Following *Gift*, and as a direct response to that decision, the Tennessee legislature amended T.C.A. § 67-5-2010, adding subsection (d):

> (d) For purposes of any claim in a bankruptcy proceeding pertaining to delinquent property taxes, *the assessment of penalties determined pursuant to this section constitutes the assessment of interest.*

T.C.A. § 67-5-2010(d) (effective July 1, 2014) (emphasis added). In other words, the Tennessee legislature attempted to fix the problem by amending state law to say that, in bankruptcy cases, penalties equal interest.

## FACTS OF BRATT CASE

Mildred Josephine Bratt ("Debtor") filed a chapter 13 bankruptcy case on July 3, 2014. The Debtor listed a $5,200 secured debt to Metro for delinquent property taxes and proposed to pay 12% interest. Metro objected, arguing that the interest rate must be 18% based on 11 U.S.C. § 511 and the newly amended T.C.A. § 67-5-2010(d). Recognizing that Metro's objection may involve constitutional questions, the parties, including the Chapter 13 Trustee, agreed to confirm the Debtor's chapter 13 plan (since it was feasible and otherwise confirmable whether Metro ended up receiving 12% or 18%), reserving all issues relating to the ultimate treatment of Metro's claim.

3

## THE PARTIES AND THEIR POSITIONS

The parties offer different interpretations of amended T.C.A. § 67-5-2010(d) in the context of 11 U.S.C. § 511(a).[3] Section 511 of the Bankruptcy Code was amended in 2005 to require the bankruptcy court to look to "applicable nonbankruptcy law" to determine the interest rate on any "tax claim." The Debtor argues that the amended statute is a blatant attempt to circumvent *Gift* and federal law and is therefore unconstitutional under the Supremacy Clause. The Debtor also contends that the amended statute violates the Equal Protection Clause and is void as against public policy because the transformation of a penalty into interest for bankruptcy debtors is not rationally related to a legitimate government purpose. The Debtor asserts that T.C.A. § 67-5-2010(d) "treats debtors in bankruptcy different from other debtors for the sole purpose of collecting a debt, ahead of other creditors, … [and] arbitrarily creates a new and favored status for the government creditor to collect, as a priority, a thinly-disguised penalty that previously was payable on an equal basis with other creditors."

The Chapter 13 Trustee takes a slightly different approach in an effort to avoid the thorny constitutional issues. He argues the requirement in § 511(a) that the government interest rate be determined under "applicable nonbankruptcy law" does not encompass Tennessee's amended

---

[3] 11 U.S.C. § 511 provides:

Rate of interest on tax claims

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.
> (b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

4

law that purports to establish an interest rate that applies only in bankruptcy cases. In other words, the Chapter 13 Trustee argues that the Tennessee statute establishes a bankruptcy-specific interest rate used only in bankruptcy cases, and therefore, is a "bankruptcy law."

Under that interpretation, since the state statute is a "bankruptcy law," it cannot be "applicable nonbankruptcy law" for purposes of § 511(a) – and thus does not get the safe harbor treatment that government interest otherwise receives. While the Trustee would prefer to avoid the constitutional issue, his alternative approach is to join with the Debtor in arguing that the Supremacy Clause prevents the State from establishing a bankruptcy-specific interest rate for tax claims inconsistent with 11 U.S.C. § 506.

The State[4] argues that the holding in *Gift* led to an awkward result in that non-bankrupt taxpayers paid interest and penalties totaling 18% on their delinquent taxes while bankrupt taxpayers paid only 12% interest. This anomaly lead Tennessee's legislature to amend T.C.A. § 67-5-2010, and now all taxpayers with delinquent taxes are required to pay a total of 18%. According to the State, T.C.A. § 67-5-2010(d) does not violate the Supremacy Clause because Congress has delegated to states the prerogative to set interest rates on state law tax claims in bankruptcy. The State disagrees with the Trustee's "applicable nonbankruptcy law" argument and further maintains that the Equal Protection Clause cannot be implicated because

---

[4] The Court refers to the "State" collectively as including both Metro and the State of Tennessee unless there is a distinction in those parties' positions. The State of Tennessee became a party to these proceedings pursuant to 28 U.S.C. § 2403 and Rule 5.1 of the Federal Rules of Civil Procedure because the constitutionality of a Tennessee statute affecting the public interest was drawn into question. Their arguments in defending the effectiveness of the state statute are substantially the same.

5

all taxpayers, in and out of bankruptcy, are paying 18% regardless of whether it is labeled interest or penalties.

## ANALYSIS

The two distinct constitutional challenges to the statute involve the Supremacy Clause,[5] and the Equal Protection Clause.[6] Since the Chapter 13 Trustee contends that these issues can be avoided by determining that T.C.A. § 67-5-2010(d) is not "applicable nonbankruptcy law," that issue must be addressed first. *Feed the Children, Inc. v. Metropolitan Government of Nashville and Davidson County*, 330 F. Supp. 935, 942 (M.D. Tenn. 2002) ("Courts are generally to avoid deciding constitutional issues, instead opting to resolve a motion on nonconstitutional grounds whenever possible.").

### A. "Applicable Nonbankruptcy Law"

Under § 511, interest rates on tax claims at any governmental level are determined in accordance with "applicable nonbankruptcy law," whatever that law may be. The question raised by the Trustee is whether a

---

[5] The Supremacy Clause is found at Art. VI, cl. 2 of the United States Constitution and provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

[6] The Fourteenth Amendment provides in material part:

> Section 1.... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

state law that applies only in bankruptcy essentially becomes a "bankruptcy law," and therefore cannot be a "nonbankrutpcy law" within the meaning of § 511. If that is the case, then the State would lose its broad authority to set interest rates that would be binding in bankruptcy cases, and the whole question of whether penalties could "constitute" interest for bankruptcy purposes would be moot since other standards governing appropriate interest rates would apply.

In construing provisions of the Bankruptcy Code, courts should follow the plain meaning rule: if the statute is clear and unambiguous, absent an absurd result, it must be applied as written. *See Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, (2000) (in turn quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)))).

The obvious purpose of § 511 is to utilize a uniform approach to how interest rates are determined for "tax claims" at any government level. That section directs bankruptcy courts to look to "applicable nonbankruptcy law" in allowing or disallowing interest. The plain, straightforward meaning of the statute is that governmental creditors are permitted to be paid on their bankruptcy claims based on the interest rate set by local, state, or federal law *outside* the Bankruptcy Code. The plain language reflects that the reference to "applicable nonbankruptcy law" is nothing more or less than a distinction between provisions of the Bankruptcy Code versus laws found elsewhere that govern interest rates on delinquent taxes.

7

Since the statute is not ambiguous on its face, it is not necessary to look beyond the plain meaning. However, it is worth noting that legislative history is consistent with the plain meaning interpretation. Congress enacted 11 U.S.C. § 511 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. "[A]pplicable nonbankruptcy law" is not a defined term, but the House Report that accompanied the enactment of § 511 does reveal the overall goal of the statute:

> Under current law, there is no uniform rate of interest applicable to tax claims. As a result, varying standards have been used to determine the applicable rate. Section 704 of the Act amends the Bankruptcy Code to add section 511 for the purpose of simplifying the interest rate calculation. It provides that for all tax claims (federal, state, and local), including administrative expense taxes, the interest rate shall be determined in accordance with applicable nonbankruptcy law.

*H.R. Report No. 109–31* at 101 (2005).

The Trustee is not disputing that "nonbankruptcy law" can derive from multiple government sources. Rather, he is advocating an even broader interpretation – that state law can transform from "nonbankruptcy law" into bankruptcy law by the State having the law apply *only* in the bankruptcy context.[7]

---

[7] To make his point, the Trustee relies upon the Sixth Circuit Court of Appeals opinion in *Richardson v. Schafer (In re Schafer)*, 689 F.3d 601 (6th Cir. 2012) that addressed a Michigan bankruptcy-specific exemption statute wherein the chapter 7 trustee argued that the statute was "bankruptcy law." The Sixth Circuit ultimately found that states are given a "wide berth" in making exemption laws and upheld the state statute. 689 F.3d at 609. The Trustee concludes that *Schafer's* language about states sharing "concurrent authority" with Congress in promulgating bankruptcy laws supports his position that the State of Tennessee has, in effect, promulgated a "bankruptcy law." The State, on the other hand, contends that *Schafer* demonstrates that Congress can delegate to the states broad authority over matters connected to bankruptcy and this was done with 11 U.S.C. § 511.

*Schafer* provides an excellent overview of the unique interrelationship between state and federal laws regarding exemptions, but it dealt strictly with exemption statutes, where the history is much more complex than the fairly straightforward language in 11

The Trustee's argument was raised and rejected in *In re Fowler*, 493 B.R. 148 (Bankr. E.D. Cal. 2012). In *Fowler,* a California statute, with similar provisions to T.C.A. § 67-5-2010(d), was challenged as violating the Supremacy Clause and also as being "bankruptcy law" and therefore outside the scope of "applicable nonbankruptcy law."[8] Like the Chapter 13 Trustee in this case, the debtor in *Fowler* argued that "applicable nonbankruptcy law" is law that is (1) not part of the Bankruptcy Code, (2) is not intended to apply specifically only to bankruptcy cases and (3) does not treat debtors and non-debtors differently, *i.e.*, it does not have a disparate impact on debtors and non-debtors. *Fowler*, at 151.

*Fowler* also rejected an earlier decision of the Bankruptcy Court for the Northern District of California,[9] that held "Congress's intent in enacting

---

U.S.C. § 511. Federal exemption law expressly vests certain power to the states regarding that subject. Since the entire structure of the bankruptcy exemption statutes is geared toward allowing states to opt in or out of federal exemption provisions, 11 U.S.C. § 522(b)(2), it is no wonder that the *Schafer* court acknowledged the latitude that states have in that regard. However, *Schafer* is not dispositive on the "applicable nonbankruptcy law" question because the ruling dealt specifically with the intertwined state and federal law with respect to exemptions only.

[8] RTC § 4103 sets forth requirements for redemption penalties on unpaid tax obligations and interest rates on claims for unpaid state taxes in bankruptcy cases, and states in relevant part:

> (a) Redemption penalties are the sum of the following:
> (1) Beginning July 1st of the year of the declaration of tax
> default, on the declared amount of defaulted taxes at the
> rate of 1 1/2 percent a month to the time of redemption.
> ....
> (b) For purposes of an administrative hearing or any claim in a bankruptcy
> proceeding pertaining to the property being redeemed, the assessment of
> penalties determined pursuant to subdivision (a) with respect to the
> redemption of that property *constitutes the assessment of interest.*

Cal. Rev. & Tax Code § 4103 (emphasis added).

[9] *In re* Collier, 416 B.R. 713 (Bankr. N.D. Cal. 2008). The ruling in *Collier,* which overruled a county tax collector's objection to confirmation of the debtor's Chapter 13 plan, was later reversed in an unreported decision, *In re Collier,* No. 08-43740 TG, 2009 WL 5449150

9

11 U.S.C. § 511(a) was to prevent any distinction made between bankruptcy and non-bankruptcy debtors with respect to the interest rate imposed on delinquent tax claims." *In re Collier,* 416 B.R. 713, 718 (Bankr. N.D. Cal. 2008). *Fowler* concluded that the legislative record relating to 11 U.S.C. § 511 did not support the debtor's (and here the Chapter 13 Trustee's) argument:

> There is no evidence in the legislative history with respect to the enactment of § 511 which indicates that Congress cared at all about preventing any "distinction between bankruptcy and non-bankruptcy debtors." Rather, the legislative history indicates that the purpose of § 511 was to prevent debtors from proposing varying interest rates to be paid on tax claims. Congress's intent in enacting § 511 was to prevent exactly what the debtor is trying to do in this case.

*Fowler*, at 155.

This Court finds *Fowler* persuasive on this point. That analysis, taken together with this Court's conclusions about the plain meaning of the statute, makes it clear that "applicable nonbankruptcy law" in 11 U.S.C. § 511 means law that is not within Title 11. Thus, the Court must reject the Trustee's statutory interpretation argument. This leads to a discussion of the constitutional challenges based on the Supremacy and Equal Protection Clauses.

### B. Supremacy Clause

The Debtor and the Chapter 13 Trustee contend that T.C.A. § 67-5-2010(d) violates the Supremacy Clause. The United States Supreme Court discussed the nature of the Supremacy Clause noting that conflicts between federal and state governments are, of course, possible:

---

(Bankr. N.D. Cal., Jan. 5, 2009) on the ground that the issue of whether RTC § 4103(b) was preempted by the Bankruptcy Code was moot.

> The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. Under this principle, Congress has the power to preempt state law. See *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); *Gibbons v. Ogden,* 9 Wheat. 1, 210–211, 6 L.Ed. 23 (1824). There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision. See, *e.g., Chamber of Commerce of United States of America v. Whiting,* 563 U.S. ___, ___, 131 S.Ct. 1968, 1974–1975, 179 L.Ed.2d 1031 (2011).

*Arizona v. United States*, ___ U.S. ___, 392 S.Ct. 2492, 2500-01 (2012).

In the simplest terms, the Supremacy Clause is understood as a preemption question. Preemption can occur by: (1) express preemption, (2) field preemption, or (3) conflict preemption. *Id.* at 2500-01. As further explained by the Sixth Circuit in *Richardson v. Schafer* (*In re Schafer*), 689 F.3d 601 (6th Cir. 2012), express preemption arises when "the intent of Congress to preempt state law is explicit." *Schafer*, at 614 (citing *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 561 (6th Cir. 2002)). Field preemption occurs when the federal regulation or interest in a field is so pervasive or dominant "that an intent can be inferred for federal law to occupy the field exclusively." *Id.* Conflict preemption – in addition to those situations when compliance with both federal and state law would be impossible – applies "where the enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law." *Id.*

The federal role in the overall bankruptcy and tax claim area is not exclusive in all respects, making field preemption inapplicable. Likewise, express preemption would not apply since Congress has not expressly forbid state involvement in the issue at hand. To the contrary, § 511 indicates that

11

Congress intended to allow the states to be involved in how tax claims are to be paid since it carved out "rate of interest" for determination by nonbankruptcy law.

That leaves conflict preemption. The question then, is whether the amendment of T.C.A. § 67-5-2010(d) redefining penalties as interest, despite unambiguous federal policy disallowing penalties, has created a conflict between state and federal law sufficient to implicate the Supremacy Clause. And, if so, is the conflict so great that T.C.A. § 67-5-2010(d) is inconsistent with or contrary to the purposes or objectives of federal bankruptcy law? *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 604 (1991).

To determine the purposes and objectives of the Bankruptcy Code, the Court must look at the claims process and the policies established by 11 U.S.C. §§ 502, 506, and 511. This Court discussed the interaction of these statutes in *Gift*. Section 502 controls the overall question of whether a claim will be allowed or disallowed. Section 506 provides the roadmap for determining whether and to what extent a claim is secured. A secured claim is defined by § 506(a)(1), and § 506(b) then provides what amounts may be added to the claim because it is oversecured. *Gift*, 469 B.R. at 803-04. Ultimately, this Court concluded that the penalty sought by Metro was not a fee, cost, or charge under section 506(b) and therefore not allowed.[10]

---

[10] In *Gift*, this Court relied upon *In re Brentwood Outpatient Ltd.,* 134 B.R. 267 (Bankr. M.D. Tenn. 1991) *overruled on other grounds Bondholder Comm. v. Williamson Cnty (In re Brentwood Outpatient, Ltd.),* 43 F.3d 256 (6th Cir. 1994), which recognized the policies behind 11 U.S.C. § 506(b) that prevented the addition of a penalty to an oversecured claim:

> The drafters of the Bankruptcy Code elsewhere used the words "penalties," "fees," "costs" or "charges" as if their meanings are distinct. *See, e.g.,* 11 U.S.C. § 107(a) (access to court records without "charge"); 11 U.S.C. § 322(c) (trustee not liable personally for "penalty or forfeiture"); 11 U.S.C. § 328(a) ("contingent fee"); 28 U.S.C.A. § 1930 (Law. Co-op. 1989) (bankruptcy "fees"); … In many other contexts, Congress has recognized that "penalties"

12

Section 506(b) governs the initial stage of bankruptcy from the filing of a petition to confirmation of a plan.[11] An oversecured claim that will be paid over time under a confirmed bankruptcy plan actually gives rise to two separate post-petition interest periods. The first period runs from the petition date to either confirmation or the effective date of the plan pursuant to section 506(b). *Key Bank of New York v. Harko (In re Harko),* 211 B.R. 116, 119, (B.A.P. 2nd Cir. 1997), *aff'd sub nom. Key Bank Nat'l Ass'n v. Milham (In re Milham),* 141 F.3d 420 (2nd Cir. 1998). The oversecured claim, including the interest awarded under section 506(b), then becomes the final bankruptcy claim that must be provided for at confirmation. It is the sum of the claim at the petition date plus interest, fees, costs and charges awarded pursuant to section 506(b) on which post-confirmation interest is paid. *Id.*

---

are different from "fees", "costs" or "charges." … Furthermore, a penalty is inherently different from a fee, cost, or charge:
    The dictionary definitions of these words are dissimilar. "Penalties" conventionally include some concept of punishment. BLACK'S LAW DICTIONARY 1290 (4th ed. rev. 1968). "Charges" involve ordinary duties, burdens or obligations. BLACK'S at 294–95. A "fee" usually includes compensation for goods or services. BLACK'S at 740–41. "Costs" typically include reimbursement of expenses to an officer or agency. BLACK'S at 415–16.

*Gift*, 469 B.R at 807 (partially quoting *In re Brentwood Outpatient Ltd.,* 134 B.R. 267). Therefore, the policy behind 11 U.S.C. § 506(b) is to allow "fees, costs, and charges" to an oversecured creditor, but not penalties. After the claim amount is established, only interest can be added going forward after confirmation pursuant to 11 U.S.C. § 1325. For government authorities, that interest is set by 11 U.S.C. § 511 – which is determined by "applicable nonbankruptcy law."

[11] As recognized in *Gift*, "[e]very circuit that has discussed the temporal aspect of Section 506(b) relies on the Supreme Court's statement in *Rake* that Section 506(b) applies only from the date of filing through confirmation." *Id. (quoting First United Sec. Bank v. Garner (In re Garner),* 663 F.3d 1218, 1220 (11th Cir. 2011)). *See also Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition,* § 116.1, at ¶ [8], Sec. Rev. June 7, 2004, www. Ch 13 online. com (agreeing).

13

Case 3:14-bk-05344 Doc 75 Filed 02/26/15 Entered 02/26/15 16:13:51 Desc Main
Document Page 13 of 19

The second interest period commences on confirmation or the effective date and runs until the last payment of the claim. This "present value" interest derives from 11 U.S.C. § 1325(a)(5)(B) of the Bankruptcy Code. That provision is typically satisfied in the form of interest payments but includes no language that would support any recovery of penalties after confirmation.

Thus, the amount of the allowed secured claim, which does not include penalties, is set in accordance with 11 U.S.C. §§ 502 and 506(b), and then paid under the plan pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) at present value by assessing interest.[12] For government authorities with secured tax claims, § 511 is invoked because Congress removed the bankruptcy court's equitable discretion to determine an appropriate interest rate on a case-by-case basis and replaced it with a rate established under § 511's directive to look to "applicable nonbankruptcy law" to determine what interest the particular government entity may charge. *Gift*, 469 B.R. at 811.

The combination of these federal statutes dictates how oversecured creditors are to be paid. The express language of these bankruptcy statutes and the clear intent reflected in the overall claims process create a well-defined federal policy that post-petition penalties that might otherwise be owed to secured creditors are simply not paid in bankruptcy cases.

In addition to reflecting the clear wording of the statutes and federal bankruptcy policy regarding penalties, this approach promotes fairness

---

[12] *See Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 111.1, at ¶ 2, Sec. Rev. May 28, 2004, www.Ch13online.com.* ("The phrase "value, as of the effective date of the plan" means that the stream of future payments must be discounted to a present value that is not less than the allowed amount of the secured claim. The accepted way to satisfy the present value requirement in § 1325(a)(5)(B)(ii) is to determine the allowed amount of the secured claim and then apply an appropriate interest rate to guarantee that the present value of payments through the plan will equal or exceed the allowed amount of the secured claim.").

14

among creditors. Oversecured creditors are not allowed to increase their recoveries through punitive, non-compensatory amounts while at the same time unsecured creditors are typically not being fully compensated for their actual losses. That overriding framework established by bankruptcy law is critical to a review of how amended T.C.A. § 67-5-2010(d) now circumvents the federal policy.

The State amended T.C.A. § 67-5-2010(d) as follows:

(d) For purposes of any claim in a bankruptcy proceeding pertaining to delinquent property taxes, the assessment of penalties determined pursuant to this section constitutes the assessment of interest.

By requiring that the 6% penalty that is imposed on all delinquent taxpayers be construed as interest for taxpayers in bankruptcy, the State attempted to ensure that non-debtors and debtors alike pay a cumulative 18% on delinquent property taxes. The only problem is that the penalty by any other name is still a penalty, and this Court has already found in *Gift* that the Bankruptcy Code does not permit penalties to be added to an oversecured tax claim.

The Tennessee statute impermissibly conflicts with long-standing federal bankruptcy policy against the collection of penalties by an oversecured claimholder in at least two ways: (1) the Tennessee statutory amendment does not set a "rate of interest" as allowed by § 511, but instead directs the bankruptcy court to treat the state's penalty claim inconsistently with the Bankruptcy Code, and (2) the penalty, called interest by the statute, is clearly penal in nature.

Section 511 unquestionably allows taxing authorities to set rates of interest:

Case 3:14-bk-05344 Doc 75 Filed 02/26/15 Entered 02/26/15 16:13:51 Desc Main Document Page 15 of 19

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the *rate of interest* shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a) (*emphasis added*). The clear language of the federal statute provides that the "rate" of interest shall be determined under applicable nonbankruptcy law – in this case, Tennessee law. A plain reading of the amended Tennessee statute demonstrates that the State has not, in fact, changed the "rate" of interest paid by debtors in bankruptcy. Instead, it effectively directs the bankruptcy court to impose penalties even when the Bankruptcy Code precludes penalties.

Subsection (a) of T.C.A. § 67-5-2010 sets the rate of interest and the penalties that apply to all taxpayers:

> (a)(1) To the amount of tax due and payable, a penalty of one-half of one percent (0.5%) and interest of one percent (1%) shall be added on March 1, following the tax due date and on the first day of each succeeding month, except as otherwise provided in regard to municipal taxes.

This statutory structure is crucial to the analysis of what the State has done. Amended subsection (d) does not change the rate of interest set for all taxpayers in subsection (a). It is still 12% for everyone. The amendment also does not eliminate the penalty imposed on debtors in bankruptcy. That 6% penalty still applies across the board pursuant to subsection (a). Instead, the additional language in subsection (d) dictates to the federal bankruptcy court how to treat a tax claim in bankruptcy for § 506(b) purposes. The legislative history of the amendment, in fact, demonstrates

that the whole purpose of the amendment was to "direct the bankruptcy court" to treat penalties as interest.[13]

In a not so veiled way, the Tennessee statute tells the bankruptcy court to allow the penalties as interest even though penalties are not allowed as part of an oversecured claimholder's claim under the federal statutes. Subsection (a) of the statute still imposes the penalty, but subsection (d) essentially provides that, solely in bankruptcy cases, the imposition of the penalty is to be ignored by the bankruptcy court, and bankruptcy courts are expected to call it something else – "interest." For purposes of bankruptcy only, "the assessment of penalties … constitutes the assessment of interest."

While § 511 of the Bankruptcy Code does allow the Tennessee legislature to set what "rate of interest" it charges, it does not allow the State to dictate to the bankruptcy court how to treat a penalty claim in bankruptcy. On the most fundamental level, T.C.A. § 67-5-2010(d) fails to respect the application, spirit, and purpose of the Bankruptcy Code's carefully structured system of claim allowance – which includes a prohibition against punitive rather than compensatory amounts being added to the claims of oversecured creditors.

Moreover, the State conceded during oral argument that the additional 6% penalty, which is supposed to "constitute" interest in bankruptcy cases, is not compensatory in nature:

---

[13] Senator Jack Johnson's Comments on Senate Bill 2128 (which became subsection (d) in T.C.A. § 67-5-2010) on March 10, 2014, are illustrative of the amendment's overreaching:

> It will *direct* the bankruptcy court to consider penalties as interest for the purposes of bankruptcy proceedings.

*State of Tennessee, Admitted Exhibit A* (emphasis added).

17

> [The statute] is not designed to compensate the government for the lost time value of money. Part of it is, but that is not the entire part. It is really a penalty − even 12% in today's market would be considered a high interest rate − higher than compensatory.

*State of Tennessee Attorney Gil R. Geldreich (Statement during Jan. 6, 2015 Oral Argument).* The State argued that imposing the full 18% provides an incentive for taxpayers to pay their taxes. Such statements must be viewed as an acknowledgement that the penalty portion is not compensatory but rather penal, or at least coercive, in nature.

The amendment to the Tennessee statute impermissibly commands the bankruptcy court to treat a disallowed penalty as interest on tax claims in contravention of the policies under federal law. This is clearly beyond what 11 U.S.C. § 511 allows. This is not setting a "rate of interest" as provided by § 511, but rather is an attempt to redefine critical provisions of the Bankruptcy Code. It is therefore an unconstitutional assault by the State on federal bankruptcy law and its policies. There is no way to avoid the conclusion that T.C.A. § 67-5-2010(d) is an unconstitutional encroachment on the Bankruptcy Code pursuant to the Supremacy Clause.

### C. Equal Protection Clause

The State contends that, regardless of the labels used, all Tennessee delinquent taxpayers are paying a cumulative 18%, and the Equal Protection Clause is not implicated since there is no disparate treatment between debtors in bankruptcy and others. Having found subsection (d) of T.C.A. § 67-5-2010 unconstitutional based on the Supremacy Clause, the Court need not address the Equal Protection Clause or any other argument

for rendering the Tennessee statute unenforceable.[14]  Because the statute does not pass constitutional muster based on the Supremacy Clause, any ruling on alternative theories is neither necessary nor appropriate.

## CONCLUSION

Subsection (d) of T.C.A. § 67-5-2010 is unconstitutional because it violates the Supremacy Clause of the United States Constitution. The objection to confirmation raised by Metro is overruled.  The Debtor's confirmed plan shall reflect that only the 12% interest rate provided by T.C.A. § 67-5-2010(a) must be paid to Metro to satisfy the requirements of 11 U.S.C. §§ 511 and 1325(a)(5)(B)(ii).  To the extent any separate order is needed to effectuate this ruling, the Trustee and the Debtor shall submit such an order.

IT IS SO ORDERED.

---

[14] The Debtor also originally asserted a separate argument that the Tennessee statute should be unenforceable as against public policy.  However, at oral argument it was acknowledged by counsel for the Debtor that there was no independent public policy basis for the relief sought but rather all the public policy arguments were effectively incorporated into the Debtor's position regarding the Supremacy Clause and the Equal Protection Clause.

19

This Order has been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:14-bk-05344    Doc 75    Filed 02/26/15    Entered 02/26/15 16:13:51    Desc Main
Document      Page 19 of 19